## MILLAM v. SOUTHERN RY. CO.

1. EVIDENCE.—A LIVERYMAN who saw horses before and after shipment is a competent witness to prove amount of damages to them by shipment.
2. IBID.—RAILROADS.—The agent of the terminal line may testify as to contents of bill of lading and as to collection of charges for connecting line, in suit against it for damages to live stock in shipment.
3. IBID.—BILL OF LADING.—The admission by plaintiff on cross-examination of signature to agreement on back of bill of lading does not entitle defendant to offer in evidence the bill of lading.
4. NONSUIT.—It is error to grant nonsuit upon presumption of facts, if any other facts be in testimony.
5. RAILROADS.—CHARGE as to liability of connecting line in shipment of stock, and as to what proof plaintiff must produce to make it liable for injuries thereto, approved.
6. JURIES—RAILROADS.—There being some doubt whether defendant had a receipt from its connecting line for stock, it was properly left to the jury to say if the shipment was under special contract, or common law rule.
7. RAILROADS—LIVE STOCK.—In case the owner fails to water and feed stock during shipment, as required by statute, it becomes the duty of carrier to do so, and he cannot by contract shift the burden of proving negligence in this regard on shipper.

Before WATTS, J., Newberry, November, 1900. Affirmed.

Action by Robert R. Millam against Southern Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. B. L. Abney* and *Duncan & Sanders,* for appellant. The latter cite: *Defendant not liable for damages done by a connecting line:* 43 S. C., 470; 107 U. S., 192; 104 U. S., 157; 23 Am. St. R., 551; 25 Am. St. R., 59. *In absence of proof presumption is that damages were done by last carrier:* 30 Am. St. R., 577; 18 Am. St. R., 386. *Delivery to connecting line in good order, relieves defendant:* Rev. Stat., 1720; 43 S. C., 370; 33 S. C., 359; 24 Am. St. R., 626; 36 S. C., 117; 107 U. S., 102; 104 U. S., 157; 23 Am. St. R., 551; 25 Id., 59; 30 Id., 577; 18 Id., 386; 61 Id., 681. *Defendant is not bound to deliver safely at destination on connecting line:* 19 S. C., 53; 36 S. C., 116; 43 S. C., 169; 107 U. S., 106; 16 Wall., 318; 104 U. S., 157; 24 Am. R., 626; 24 Am. R., 33. *Common carrier does not insure live stock against injuries from their condition or each other:* 107 U. S., 107; 123 U. S., 734; 15 Am. R., 21; 9 S. C., 61; 52 S. C., 51; 63 Am. St. R., 541. *By terms of contract shipper assumed burden of proof that damage resulted from negligence of defendant:* 32 Am. St. R., 239; 63 Id., 541; 7 Id., 116; 15 Am. R., 744; 56 S. C., 152.

*Messrs. Johnstone & Welch,* contra, cite: *It was for jury to say if it was negligence to ship by longer route:* 7 Rich. L., 191. *Defendants cannot have nonsuit on strength of its own evidence brought out in cross-examination:* 26 S. C., 264. *Admission of cumulative evidence is discretionary:* 16 S. C., 495; 1 Speer L., 182; 5 S. C., 285; 28 S. C., 37. *The initial carrier is liable for freight to its destination:* 33 S. C., 366; Rev. Stat., 1720. *Charge must be considered as a whole:* 29 S. C., 4, 34; 37 S. C., 335; 40 S. C., 383; 41 S. C., 440; 26 S. C., 267; 32 S. C., 392. *Defendant must show exemption by contract from common law liability:* 26 S. C., 267; 39 S. C., 59. *Error in defendant's favor not reversible:* 28 S. C., 33; 32 S. C., 41; 39 S. C., 349. *Rail-*

*road must water, &c., if owner fails:* 52 S. C., 51. *Contrib-utory negligence is part of defense:* 26 S. C., 49; 25 S. C., 53; 21 S. C., 495; 19 S. C., 20; 32 S. C., 299; 23 S. C., 531; 29 S. C., 303.

July 16, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE. The plaintiff by his action sought to recover $1,000 damages by reason of the injuries sustained by a lot of twenty-four horses which were transported by the defendant from Birmingham, Alabama, to Newberry, in the State of South Carolina. Plaintiff in his complaint sets up three causes of action—*one* based upon the common law doc-trine that the defendant was an insurer of the freight re-ceived by it as a common carrier; the *second* charged the same facts as were set forth in the first cause of action, except that the defendant was charged with negligence by which injuries to the twenty-four head of horses resulted; and the *third* charged wanton negligence. By the answer of the defendant, it admitted that it was a common carrier, but denied all other allegations of the complaint; alleging, in addition thereto, that the plaintiff was responsible for all injuries which resulted to his car load of horses from a fail-ure to feed, water and rest them, as was required by law; that any injuries done the said car load of horses happened upon some other line of railway, in their transportation to Clinton, S. C., than on the defendant railway. The cause came on for trial before Judge Watts and a jury. During said trial the defendant objected to certain testimony offered by plaintiff; also, it made two motions for nonsuit, both of. which were overruled; also, it made certain requests to charge, which were declined by the Circuit Judge. Verdict was for plaintiff in the sum of $300. After judgment thereon, defendant appealed upon the grounds previously in-dicated, and also upon the ground that the Circuit Judge erred in portions of his charge to the jury.

The first ground of appeal suggests error in the Circuit Judge in allowing the plaintiff to testify in answer to the

question: "From your experience as a horse dealer and from your knowledge of the valuation of horses, did you or did you not have to sell your horses at a price less than their real value by reason of these injuries? Did you by reason of these injuries sell your horses for less than they were worth?" The testimony offered here showed that these twenty-four horses, when taken from the car in which they had been transported from the city of Birmingham, in the State of Alabama, to the village of Clinton, in the State of South Carolina, were scarred, bruised, gaunt, stiff in limbs, with high fever, and that two were down on the floor of the car, and had to be struck with a whip to be made to get up; and that on the day after arrival, a handsome grey died, having passed blood before death, and a little later than the next day after arrival, two other of the horses died. But soon after arrival—in a few days—plaintiff sold some of the horses. The plaintiff was the owner and keeper of a livery and sales stable. Hence the Circuit Judge allowed him to answer these questions. Before going further, it should be stated that the plaintiff had inspected the horses when he bought them. Therefore, he knew how they looked at the date of shipment, how they looked on their arrival at Clinton, and how they looked several days thereafter when he sold them. We cannot see anything speculative in the testimony in question. It was based upon facts within the knowledge of this witness. In 12 vol. A. & E. Ency. of Law, page 477 (2d ed.), the doctrine is thus stated: "Farmers, dealers in horses and liverymen who know the value of horses generally may testify thereto." See, also, page 460 of same authority, which says: "On damages, as on other subjects of expert opinion evidence, the opinions of witnesses must not be speculative or conjectural, but must be based on facts and conditions existing and proved." Who is there who has not been astonished at the accuracy of dealers in stock and hogs in their estimate of the weight of each one of them. It is this accuracy of judgment derived from the experience of dealers in stock which gives their

opinions as to the value of horses, mules, &c., such great weight. This exception is overruled.

Again appellant suggests that the Circuit Judge erred when he allowed Mr. Horton, as the agent of the Columbia, Newberry and Laurens Railroad, which railroad had received the car load of horses from the defendant at Newberry, to testify as to the three waybills on which he had receipted for the charges of the defendant itself for feeding the horses at Birmingham, Atlanta, Ga., and Hodges Depot, S. C. We believe the defendant withdrew this exception. But in the abundance of caution we pass on it—and in doing so we remark that the service of Mr. Horton in collecting these bills, entered as waybills, was as the *quasi* agent of said defendant in its collection of charges from the plaintiff, which service of Mr. Horton the defendant has ratified. This exception is overruled.

In its second exception, the defendant suggests that the Circuit Judge erred in not allowing it to introduce in evidence, while one of the plaintiff's witnesses was being examined and before the defendant introduced any testimony, a bill of lading after the plaintiff had admitted that he had signed some writing on the back of said bill of lading. When Mr. Millam, the plaintiff, was on the witness stand, the defendant asked him in cross-examination, if he had not signed such a paper, a copy of which was exhibited to him. The witness replied that he did not know whether he had signed such a paper or not, but said he would know his signature when he saw it. It was at this point when defendant's counsel proposed to open the commission it had issued to examine some witnesses at Kansas City, State of Missouri, claiming that the original papers, which had been signed by Mr. Millam, and a copy of which he had exhibited to Mr. Millam, would be found attached to the bill of lading. After a while the Court allowed the package containing the depositions of witnesses taken in Missouri to be opened and the papers referred to taken out, while Mr. Millam, as plaintiff's witness, was on the stand, and the

counsel for defendant then exhibited the papers, of which the following is a copy, signed by Mr. Millam, to wit: "Form 45. Kansas City, Fort Scott and Memphis R. R. Live Stock Contract. Duplicate. Station Kansas City. Date October 28, 1896. In consideration of the free transportation granted us by Kansas City, Fort Scott and Memphis Railroad Company to accompany the live stock described in the within contract on its road, and to return therefrom, and of the agreements contained in said contract to be performed by said railroad company, we the persons in charge of said live stock hereby accept and agree to be bound by all the terms and conditions of said contract which refer to the persons in charge of said live stock, especially those in regard to how and where we shall ride, and the risks we assume, contained in the ninth, tenth and eleventh paragraphs thereof; and for the same consideration, we further agree that while attending to said live stock as provided in the third paragraph thereof, we shall be deemed employees of the railroad company, of the rank of brakemen, for the purpose of determining its liability to us, and we assume all risks incident to such employment. R. R. Millam." "Pass on freight trains only R. R. Millam, agent F. D. Leeds." When the witness was shown his signature to the paper copied above, he promptly admitted that it was his signature, and that the free pass to the city of Birmingham, Ala., was given to him. But the witness said that he did not read the paper he had signed, but that he was told, "Sign this to get your pass." This he signed at Kansas City, Mo. But he swore that he knew nothing of a contract such as this bill of lading; he never signed it, nor did he ever authorize any one to sign the same in his name or as his agent. So when the attorney for the defendant asked the Court to admit it in evidence just then, the Court declined to do so. This paper, known as bill of lading, was subsequently introduced by the defendant after, by commission, he had examined the railroad authorities and Tough & Son, Kansas City, Mo. The reason that defendant was so eager to have the paper intro-

duced while plaintiff's witness was on the stand, was to enable it to move for a nonsuit at the close of plaintiff's testimony. The Circuit Judge refused to admit the bill of lading at that time. While the paper admitted by Mr. Millam to have been signed by him was admitted, and this was on the back of the bill of lading itself, this did not entitle the bill of lading itself to be admitted. The bill of lading was not yet proved, if ever it was. So there was no error on the part of the Circuit Judge. Under *Willingford & Russell* v. *R. R. Co.,* 26 S. C., 258, the defendant would have failed to have this bill of lading considered as the basis of a nonsuit, it being admitted while plaintiff's witness was on the stand. This exception is overruled, and we see no harm to the defendant, especially as the defendant had the benefit of the admission of this bill of lading afterwards.

The appellant next alleges error in the refusal of the Circuit Judge to grant a nonsuit. "3. In not granting the motion of the defendant for a nonsuit on the grounds: 1. That as the defendant had delivered the car containing the horses of the plaintiff to the Columbia, Newberry and Laurens Railroad Company, which road had delivered them to the plaintiff at Laurens, the presumption was that any injury that may have occurred to them, occurred on the line of the last named road. 2. Because there was no sufficient evidence to go to the jury of any injury done the horses of the defendant while they were in defendant's charge. 3. Because there was a total failure of evidence to sustain the allegations of the complaint." (a) The rule of law as to granting nonsuits is too firmly established by the decisions of the Court of last resort in this State to need a restatement, and yet the question is again raised, and we must pass upon it. Whenever the plaintiff fails to introduce any competent testimony to support the material allegations of his complaint, which sets up his cause or causes of action against the defendant, the Circuit Judge is authorized to grant a nonsuit. Was it the Circuit Judge's duty to nonsuit on a presumption of fact, if any other facts

were in testimony? We do not think so; for it is the place of the jury, and not that of the Judge, to weigh testimony. (b) The testimony of all the witnesses who spoke of the appearance of the horses on their arrival at Clinton, S. C., was emphatic as to the leanness, the lankness, the gauntness of the horses. There was testimony that the defendant had complied with the law in having fed the horses every twenty-eight hours, and rested them for five hours after they were fed and watered. But it was no part of the Circuit Judge to weigh this testimony. That was the province of the jury. After an examination of the testimony we cannot agree with the appellant that there was a total lack of testimony. These exceptions are all overruled.

"5. In charging, 'Now I charge you that if the defendant railroad here, received the stock as a common carrier, then they become insurers; whenever a railroad gets a charter and becomes a common carrier for the purpose of transporting freight and passengers and such matters as that, when they receive any freight as a common carrier, they become insurers of the freight, and they thereby agree to deliver it in good condition to the parties that it is consigned to. If the railroad here received this property of Millam in Birmingham, Alabama, as common carriers, then they became insurers of that property, and it was their duty to deliver it to Millam in Clinton, South Carolina, in good order; and if it was not in good order, and it was injured while in their possession, then the road would be liable.' It being respectfully submitted that his Honor overlooked the following principles or rules of law: 1. That where a common carrier in the performance of its duties delivers freight to a connecting road for transportation to its destination, it does not insure the safe delivery by such connecting road. 2. That a common carrier does not insure the safe delivery of live stock against the injuries inflicted upon such stock, by their own unruly dispositions, or by the ordinary jars or concussions incident to the usual and ordinary managing and running of a train." Not in every case does a railroad,

when it delivers property to a connecting road for transportation to its destination, insure the delivery of said property at its destination to the consignee in safety, but sometimes it does, and this must depend on its contract.   In *Kyle* v. R. R., 10 Rich., 382, the Court of last resort in this State held that the contract of the carrier required it to bear the responsibility of safe delivery at destination to the exoneration, as between the consignor and the common carrier, of the connecting road.   There were two points of view as to the contract in the case of Millam, the plaintiff, and the Southern Railway Company—one might follow from the terms of the bill of lading, signed by Tough & Son and the Kansas City, Fort Scott and Memphis Railroad Company at Kansas City, State of Missouri, and the other was what might be construed by the waybill issued by the Southern Railway Company at Birmingham, together with the circuitous route it adopted in delivering the car load of horses; for it is an undoubted fact that the Southern Railway Company brought this car load of horses to Atlanta, Ga.; at that point the nearest way to Clinton, S. C., was by the Georgia, Carolina and Northern Railroad Company, by which in at least twelve hours the car load of horses could have been carried from Atlanta, Ga., to Clinton, S. C.; whereas, in fact, the Southern Railway Company carried this car load of horses from Atlanta, Ga., to Greenville, S. C.; then from there to Newberry, S. C., at which latter point the car load of horses were sent to Clinton by the Columbia, Newberry and Laurens Railroad Company.   There was no contract evidenced by a bill of lading issued by the Southern Railway Company with the plaintiff.   The waybill was not a contract in itself, and yet it may be taken as a circumstance along with others to determine what this contract between the parties actually was.   All these are matters for the jury to solve.   Inasmuch as the Circuit Judge in his charge left it to the jury to determine defendant's liability, *limited by the requirement that the injury to the horses should have occurred while they were in the custody of the Southern Railway Co. itself,*

we can see no harm in the charge of the Judge. So, also, we may say that it was not reversible error in the Circuit Judge to fail to call the attention of the jury to any results from the unruly disposition of the stock or by the ordinary jars or concussions incident to the usual and ordinary managing and running of a train, for certainly there was no testimony on either of such matters, nor, as we recall it, was there any request made to the Judge for any charge on these lines. The exceptions are overruled.

We will consider the sixth, seventh and eighth exceptions together. "6. In instructing the jury, 'That if the stock was received by the Southern Railroad as a common carrier, then they became and would be liable for any damage that might be done to the stock; in other words, they would be then required to deliver it to Millam at Clinton, South Carolina, in good order,' thereby overlooking the principle or rule of law, which makes a common carrier an insurer only over its own line. 7. Because his Honor by his charge erred in instructing the jury that a common carrier of freight was an insurer of freight which it had delivered to a connecting carrier to be transported to its destination; whereas, it is respectfully submitted, a common carrier is not an insurer of freight, which, in the performance of its duty, it delivers to a connecting carrier to be transported to its destination beyond the line of such common carrier. 8. In leading the jury to think that a common carrier, to which live stock is delivered to be transported over its own and connecting lines to their destination, becomes an insurer of safe delivery of such stock at their destination; whereas, it is respectfully submitted, a common carrier of live stock does not insure: 1, against injuries which are caused by the unruly dispositions of the animals themselves; or 2, against injuries caused by the ordinary jars or concussions in the ordinary management of a train; or 3, against injuries inflicted while in the hands of a connecting line, to which such common carrier in the performance of duties had delivered such stock to be transported to their destination."

In justice to the Circuit Judge, it would be no bad idea to adopt from the argument of Mr. Welch for the respondent, under the heads of "A" and "B," respectively, under parallel columns, what the Judge said by detached portions, and what he said connectedly in regard to defendant's liability as a common carrier:

### "A."

Pages 108-109: "Now I charge you that if the defendant railroad here received the stock as a common carrier, then they became insurers. Wherever a railroad gets a charter and becomes a common carrier for the purpose of transporting freight and passengers and such matters as that, where they receive any freight as a common carrier, they become insurers of that freight, and they thereby agree to deliver it in good condition to the parties whom it is consigned to. If the railroad here received this property of Millam's in Birmingham, Ala., as a common carrier, then they become insurers of that property, and it was their duty to deliver it to *Millam in Clinton, South Carolina,* in good order; and if it was not in good order, and *it was injured while in their possession,* then the road would be liable."

Page 111: "If it was received by the Southern Road as a common carrier, then they became insurers and would be liable for any damage that might be done to the stock; in other words, they would be required to deliver it to *Millam at Clinton, South Carolina,* in good order."

Page 113: "If you believe that they took it as common carriers at Birmingham, Ala., they were insurers of the goods, and it was

### "B."

Page 109: "And if it was not in good order and it was injured while in their *possession,* then the road would be liable."

Page 112: "Now you will understand that *before the plaintiff can recover* here, the jury must be *satisfied* from a preponderance of the testimony in the case that the injury, if any at all, to the stock occurred while it was in the *possession of the Southern Railway Company. If the stock were all right and in good order when they were delivered at Newberry here to Columbia, Newberry and Laurens Road, and they were injured while in the possession of the Columbia, Newberry and Laurens Road, then the plaintiff could not recover against this defendant; his remedy, if any, then would be against the Columbia, Newberry and Laurens Road.* If, however, the testimony satisfies you that the defendant company was negligent; that they were guilty of negligence in not observing due care and due caution in the handling of that stock, or if they failed to feed it or water it or rest it, as required by law, and the stock was injured by their negligence, then the defendant here, the railroad, would be liable."

Page 112: "If the testimony satisfies you that the Southern Railway received the stock at Bir-

their duty to deliver it in good order at its *destination at Clinton."*

mingham, Ala., and it was *not injured while in their possession,* that they complied with the law, and fed and watered and rested the stock, as the law requires, *and they delivered to another road here at Newberry, in good order, and it afterwards got injured while in the possession of another road, then the plaintiff would not be entitled to recover;* in other words, *before you can give a verdict* for the plaintiff in this case you have got to be *satisfied that there was negligence on the part of the railroad,* if they received it under this contract, and that that negligence was the cause of the stock being injured, *and the injury occurred while the stock was in the possession of the Southern Railway,* and it was on *their account* that the injury occurred; then if you are satisfied that the railroad was negligent, the stock was *injured while in its possession,* then the plaintiff would be entitled to recover whatever damages in your opinion he has sustained under the testimony in the case, that being entirely a matter for you. *If this stock was injured after it left the possession of the Southern Railway, the plaintiff would not be entitled to recover. Before* the plaintiff can *recover* here, you must be satisfied that it was *injured while in the possession of the Southern Railway and they were negligent, if you believe there was this contract."*

Page 119, requests 16th and 17th: "Even if the evidence shows that the plaintiff's horses were *injured* when they arrived *at Clinton,* this fact does *not entitle* him to damages against the *Southern Railway Company;* but before he

can *recover against it,* the jury must be *satisfied* from the evidence that such injuries were inflicted *while the horses were in charge of the Southern Railway Company,* and *unless* the evidence *does satisfy* the jury of this fact, then the *verdict must* be for the *defendant."* I charge you that. *"Even* if plaintiff's horses were *injured* when they *arrived* at *Clinton,* and it was *uncertain* whether those injuries *occurred* on the *Southern Railway Company,* or *Columbia, Newberry and Laurens Railway,* then the *verdict must be for the defendant."* I charge you that.

Page 125: "As I told you before, *before* you can hold *this railroad,* responsible, you must be satisfied by a preponderance of the testimony that the injury, if any, occurred *while the stock was in their possession."*

As remarked by Mr. Welch in his argument: "Can there be any doubt, therefore, after reading these two parallel sections of his Honor's charge, what his meaning was? Column 'A' shows that the isolated portions of the charge may be taken, when considered alone, to hold that a common carrier is liable beyond its terminus. Column 'B' shows that his Honor meant to charge nothing like that. He expressly says, again and again, both in his general charge and in charging defendant's requests, that the injury, if any, for which the defendant is held liable, must have occurred on the defendant's road and while in defendant's possession. Now we confess we do not see how it could have been made plainer." We have thus reproduced what the Circuit Judge did say, and in what connection he said it. Finding, as we do, that the Circuit Judge exercised very great care in limiting by easy and just terms the liability, if any, of the defendant railroad, we are not inclined to view his remarks in his

charge as complained of, erroneous. Now, when a Circuit Judge indulges in some general remarks upon the law without any possibility of affecting thereby the issues actually on trial before him, we can see no reversible error. Somewhat akin to this is what was said by the late Chief Justice Simpson, in *Wallingford & Russell* v. *R. R. Co.*, 26 S. C., 264: *"Before discussing these exceptions,* it would be well to state some of the principles of law applicable to common carriers about which there is little or no doubt. At common law, there is no exemption to the liability of common carriers for goods, &c., entrusted to them, except for an act of God, or of the king's enemies. They are regarded as insurers as to all else. In England, however, and in several of the States of this Union, including our own (South Carolina), the common law doctrine was modified to the extent of allowing a common carrier to exempt himself from this broad liability, by special contract, as to certain specified causes of injury. See in this State, *Swindler* v. *Hillard & Brooks,* 2 Rich., 286; *Baker* v. *Brinson,* 9 Rich., 202, and other cases that need not be cited. It was, however, held in all the cases, that he could not shield himself from the consequences of negligence by a contract; that his character as a common carrier could not be changed by contract, only his liability to the extent of the specified exemptions was diminished. In all things else the general doctrine of common carriers applied, and especially as to negligence; and further, that the onus was upon him to bring himself by the testimony within the exemptions mentioned in the contract. [Here follows in the opinion a quotation from the case of *Swindler* v. *Hillard & Brooks, supra.*] * * * It was held in that case that common carriers could not by any special contract or agreement exempt themselves from liability for negligence, and that when a contract was made, the onus of showing not only that the cause of the loss was within the terms of the exemption, but also that there was no negligence, lies on the carrier." As will be seen by considering the charge, as a whole, the Circuit Judge was exceedingly careful to limit the liabil-

ity only for injuries, if any, to the twenty-four horses while they were in charge of the Southern Railway Company. The defendant insisted that the contract between the plaintiff and itself was embodied in the bill of lading signed by Kansas City, Fort Scott and Memphis Railway Company and Tough & Son. If so, the defendant had to agree to the thirteenth article of said contract, to wit: * * * "It is also agreed that the conditions of this contract shall inure to the benefit of all carriers transporting the live stock shipped hereunder, *unless they otherwise stipulate,* and that in no case shall one carrier be liable for the negligence of another." So far as the 6th exception is concerned, it must be overruled, for it is clear from an examination of the whole charge that the Circuit Judge limited the liability of the defendant to its own acts of commission and omission. And so as to the 7th exception, his Honor was very careful in his charge; and so as to the 8th exception, his Honor was, if anything, too lenient in his charge to the defendant. Hear his charge: "5. If the jury are satisfied that the bill of lading purporting to have been issued on October 28th, 1896, by the Fort Scott, Kansas City and Memphis Railroad Company to John S. Tough & Sons, is the contract for the transportation of the horses described in the complaint, from Kansas City, Missouri, to Clinton, S. C., and that this contract was made under circumstances similar to those stated in request number one, then the plaintiff cannot recover for any alleged injuries to said horses, by simply proving that said horses were in good order when they were first delivered to the railroad company, or that they were in good order at any intermediate point, and then by proving that they were damaged when they arrived at their destination; but he must go further, and prove that such injuries were not caused by their being weak, unruly or exhausted from their long journey, or from the cramped and crowded condition of the horses in the car, or from the ordinary jars or concussions incident to the ordinary managing and running of a freight train. I charge you that." Notwithstanding all these ad-

vantages conceded to the carrier, it may be that some proviso as to negligence by the carrier should have been included in the charge, but no complaint comes to us on this matter, and we only mention it to show that appellant has not been injured by the charge. This exception is overruled.

Next we will consider the ninth ground of appeal, which complains that the Judge charged the jury that "if you (the jury) believe thay took it (the car load of horses) as common carriers at Birmingham, Ala., they are insurers of the goods, and it was their duty to deliver it in good order at its destination in Clinton." The error in this charge is alleged by appellant to be that by this charge his Honor caused the jury to believe that a common carrier of live stock is an insurer: "1. Against injuries inflicted by the unruly dispositions of the animals themselves. 2. Against injuries inflicted by ordinary jars and concussions caused by the ordinary running and managing of a train. 3. Against injuries inflicted by a connecting line, to which in the performance of its duty the first carrier had delivered the stock to be transported to its destination." We have just seen that the Circuit Judge charged the law as to subdivision 1, as requested by appellant, and so, also, to subdivision 2. And so far as subdivision 3 is concerned, the charge of the Judge is its own vindication of the error here suggested. This exception is overruled.

We will next consider the tenth exception: "10. In instructing the jury, that defendant's fifth request, to wit: 'If the jury are satisfied that the bill of lading purporting to have been issued on October 28th, 1896, by the Fort Scott, Kansas City and Memphis Railroad Company to John S. Tough & Sons, is the contract for the transportation of the horses described in the complaint, from Kansas City, Missouri, to Clinton, S. C., and that this contract was made under circumstances similar to those stated in request number one, then the plaintiff cannot recover for any alleged injuries to said horses by simply proving that said horses were in good order when they were

first delivered to the railroad company, or that they were in good condition at any intermediate point, and then by proving that they were damaged when they arrived at their destination; but he must go further and prove that such injuries are not caused by their being weak, unruly or exhausted from their long journey, or from the cramped and crowded condition of the horses in the car, or from the ordinary jars or concussions incident to the ordinary managing and running of a freight train,' was only applicable to this case, provided the stock were shipped under the contract as expressed in the bill of lading, and that it was not applicable, if the defendant received the stock as common carriers; whereas, it is respectfully submitted, that the request was applicable even though the defendant did receive such horses as a common carrier." There was a contest between the parties litigant as to what contract governed the defendant in the performance of its duty as a common carrier, to wit: whether under the common law liability, without any special exemptions limiting this liability, which, of course, would follow a contract under the common law for the transportation of the twenty-four head of stock from Birmingham, Ala., to Clinton, S. C., by the Southern Railway Company, *itself;* or whether the contract of the Fort Scott, Kansas City and Memphis Railroad Company governed. This being the contest here, it would have been improper for the Circuit Judge to have made the charge as requested without adding his own closing words, if our statute, sec. 1720 of the Revised Statutes of this State, applies to the case at bar, and we may remark that we have some serious doubts as to whether the defendant has brought itself under the protection of that section, for this reason: that section says that the *initial road* shall continue liable for the *articles* received by it for shipment unless it is able to produce a receipt in writing from a connecting road for the *articles or article* so shipped. Now is the Southern Railway Company the initial road, and has it produced a receipt in writing from a connecting road for the articles so shipped? The articles shipped were *twenty-*

*four horses.* Has the Southern Railway Company produced a receipt in writing therefor? Here is the paper they produced:

"Southern Railway Co., 3d Division. Daily report of all cars received from and delivered to C., N. & L. R. R., at Newberry, S. C., station, during the twenty-four hours ending 12 midnight, Nov. 4th, 1896. Enter home cars first:

| | Received from | | | | | | Delivered to | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hour Received. | Initial of Road. | No. | Kind. | L. or E. | Destination. | Hour Delivered. | Initial of Road. | No. | Kind. | L. or E. | Destination. |
| | No. Cars. | | | | | 1 | 11.40 | Sou. | 3488 | B. | L. | Laurens. |
| | | | | | | 2 | a. m. | S.W. | 1768 | S. | L. | Clinton. |
| | | | | | | 3 | | | | | | |
| | | | | | | 4 | | | | | | |
| | | | | | | 5 | | | | | | |

I certify that the above is a correct list of cars received this day. J. A. Burton, Agent H. Received the above cars from Southern Railway Co. E. Cavanaugh, Agent W. Designate class of cars as follows: B. for box; S. for stock; F. for flat; G. for gondola, and C. for coal. This space for Sup't Car Service."

Now, remembering that the section 1720 requires a receipt in writing for the article or articles, it may be asked where in the paper tendered by the defendant is there any receipt in writing for twenty-four horses? We see the letters "S.," "L.," which are interpreted to mean "Stock"—"Loaded," yet no character to the stock shipped or number thereof here appears. Besides, the very head lines say "Daily report of all cars," and the receipt is "for the *above cars*" (italics ours); might it not be stated that the very aim of this section of our law was to fasten upon some common carrier the receipt of the specific article or articles shipped by the production of a receipt in writing of such article or articles? But be this as it may, we find no error, in this tenth exception, pointed out, and it is overruled.

We will next consider the eleventh exception, which reads: "11. In refusing to charge the defendant's request to charge, to wit: 'Where horses have been transported by successive carriers, and the proof only shows that they were in good order when first delivered, and were damaged when they reached their destination, then the law presumes that such damage was caused while such horses were in the hands of the last railroad company;' and in instructing the jury that the whole matter is a question of fact for you. As I told you before, before you can hold this railroad liable, you must be satisfied by a preponderance of the testimony that the injury, if any, occurred while the stock was in its possession, and on account of its negligence, provided you conclude they were shipped under a special contract. The error being, as it is respectfully submitted, in instructing the jury: 1. That this is a question of fact for them; whereas, it is respectfully submitted, it was a question of law for the Court to instruct the jury, what is or is not a presumption of law. 2. That before the defendant could be held liable, they must be satisfied by the preponderance of the evidence that the injury, if any, occurred while the stock was in the possession of the defendant and on account of its negligence, provided the stock was shipped under a special contract; thus overlooking the principle or rule of law, which requires the plaintiff to prove by the preponderance of the evidence, that any injuries which might have been inflicted upon the horses were caused by the negligence of the defendant, whether it receives the stock under special contract, or as a common carrier."

As to the first subdivision, we might ask what are juries provided for, unless it is to try questions of fact? It seems to us that whenever direct testimony of witnesses is introduced bearing upon a disputed question of fact, that presumptions like the "Arabs fold their tents and steal away."

As to the second subdivision, we think the Circuit Judge in his charge has more than done his duty to the defendant on this line of thought. This exception is overruled.

"12. In refusing defendant's eleventh request to charge, it being respectfully submitted that such request embodied a sound rule of law which is directly applicable to this case." Here is the eleventh request and what the Circuit Judge said thereon: "11. Where horses have been transported by successive carriers, and the proof only shows that they were in good order when first delivered, and were damaged when they reached their destination, then the law presumes that such damage was caused while such horses were in the hands of the last railroad company. I refuse to charge you that. The whole matter is a question of fact before you. As I told you before, before you can hold this road liable you must be satisfied by the preponderance of the testimony that the injury, if any, occurred while the stock was in its possession and on account of its negligence, provided you conclude they are shipped under a special contract." The Circuit Judge was right. Presumptions cease when facts are proved. It was a matter for the jury. Let the exception be overruled.

"13. In refusing to charge the defendant's second request, to wit: 'If the jury are satisfied that the bill of lading purporting to have been issued on October 28th, 1896, by the Fort Scott, Kansas City and Memphis Railroad Company to John S. Tough & Sons, is the contract made, as above stated, for the transportation from Kansas City to Clinton, S. C., of the horses described in the complaint, then it was the duty of Tough & Sons, at their own risk and expense, to take care of, feed and water, and attend to said stock, while the same were in the stock yards of the railroad company, awaiting shipment, and while they were being loaded, transported, unloaded and reloaded, and to unload and reload the same at feeding and transfer points, and wherever the same might have been unloaded and reloaded for any purpose whatever; and the plaintiff cannot recover any damages from defendant in this case, without proving to the satisfaction of the jury: 1. That the horses in question were injured while in the possession of the defendant. 2. By proving that the injuries were not caused

by the negligence of John S. Tough & Sons to take care of said horses, as they had contracted to do. In other words, under such circumstances, if they exist, the plaintiff cannot recover any damages of the defendant simply by proving that the horses were in good order in Kansas City, before they were delivered to defendant, and then by proving that they were damaged when they were received at Clinton, S. C. But before he could recover, he must go further and prove that these injuries were not attributable to the negligence on the part of Tough & Sons, to take care of said horses as they had contracted to do. It being respectfully submitted that the defendant had the right to have this request charged, because: 1. It was applicable on the question of contributory negligence on the part of plaintiff or of his agent; and 2d. If the bill of lading was the contract, then the burden of proving that the stock were not injured by the negligence of the plaintiff or his agent, was by the contract upon the plaintiff, and the defendant was entitled to have the jury properly instructed as to the force and effect of such contract." This exception raises practically two questions: (1) The request to charge was proper, because it was applicable to the question of contributory negligence. In *Comer v. R. R. Co.,* 52 S. C., 51, this Court held that even if a plaintiff fails to feed, water and rest his stock at the end of every twenty-eight hours, such stock is in a car for transportation, and during the transportation it is the duty, under the law, of the railroad company in charge of the same to so feed, water and rest stock on board their cars. (2) The next question is that by the bill of lading signed in Kansas City, Mo., it devolved upon the plaintiff to point out by his proof that the twenty-four horses were not injured by his acts. The Judge's charge clearly limits the liability of the defendant to such injuries as it inflicted. This exception is overruled.

"14. Because in refusing the defendant's third request to charge, to wit: 'Where one ships live stock over a railroad, and contracts to go along and take care of said stock while

it is being transported, loaded, unloaded and fed and watered, then, under such contract, it is the duty of such person to perform his part, and if he neglects to do so, and injuries occur to said stock on account of such negligence, the railroad. company cannot be held liable for any damages occasioned thereby.' His Honor did not instruct the jury as to the force and effect of the bill of lading, and as to its bearing upon the contributory negligence of the plaintiff." The case of *Comer* v. *R. R. Co., supra,* disposes of this ground of appeal. It is dismissed.

"15. Because the charge of his Honor was calculated to mislead the jury and cause them to think, that under the law : '1. That a railroad company could not by special contract shift the burden of proof from itself to a plaintiff, so as to make such plaintiff, who had bound himself by special contract to go along and take care of live stock, take upon himself the burden of showing that any injuries which were inflicted upon such stock while *en route* were not caused by his own negligence, failing to comply with such contract.  2. That a railroad company, which as a common carrier receives live stock to be transported to a point beyond its line, was an insurer against any damage which might be inflicted on said stock by the unruly dispositions of said stock, or by the ordinary jars and concussions incident to the ordinary running and managing of a train, or through the negligence of a connecting line, to which railroad company had, in the performance of its duty, delivered such stock for transportation to their destination."  We have reproduced the last exception of the defendant.  We must say that in the light of the decision of the Court in *Comer* v. *R. R. Co., supra,* the defendant is quite persistent in making the same question which was passed upon in that case.  The positive testimony of the plaintiff was that no ticket was furnished him upon the trains of the Southern Railway Company, but why should we refer to testimony that is for the jury.  As to second subdivision, the Circuit Judge has left us no ground to criticise his

charge. It covered the case admirably well. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.