9299

SOUTHERN RAILWAY CO. v. KIMBALL.

(88 S. E. 14.)

CARRIERS OF LIVE STOCK.  CONTRACTS LIMITING LIABILITY.  CLAIMS.  EVIDENCE.  DAMAGES.  PENALTIES.

1. CARRIERS OF LIVE STOCK — LIMITING LIABILITY — PRINCIPAL AND AGENT.—Authority on the part of shipper's agent to make a contract limiting the liability of a carrier must be shown, to bind the shipper.

2. CARRIERS—CARRIAGE OF LIVE STOCK—LIMITED CONTRACTS.—An agent to ship live stock is only authorized to ship at the regular rate unless the entire matter be left to him, or the circumstances be such that power to ship at a less rate whereby the carrier's liability was limited could be inferred; hence a mere showing that an agent of the shipper signed a bill of lading limiting the carrier's liability is insufficient to establish his authority.

3. CARRIERS—CARRIAGE OF LIVE STOCK—LIMITATIONS OF LIABILITIES.— When a shipment is delivered to a common carrier, it must be received and transported for the usual freight charges, and, though the parties have the right in consideration of reduced rates to limit the carrier's liability, a contract must be made to this effect, and the shipper's attention called to a stipulation in the bill of lading limiting liability.

4. CARRIERS—CARRIAGE OF LIVE STOCK—ACCEPTANCE OF BILL OF LADING. —That a shipper of live stock filed a claim for damages with the carrier's agent does not show an acceptance of the bill of lading limiting the carrier's liability where the shipper informed the agent he had not signed the bill, and the agent refused to take up the claim until the bill of lading was filed therewith.

5. CARRIERS—CLAIMS—EVIDENCE—NOTICE TO PRODUCE.—Where carrier denies receiving a written notice of claim, notice to produce the original is not necessary before offering a duplicate in evidence.

6. APPEAL AND ERROR.—Exceptions not argued overruled.

7. CARRIERS—CARRIAGE OF LIVE STOCK—LIABILITY—DAMAGES.—A shipper of live stock did not pay the freight and feeding charges on a

horse injured. The carrier's agent with whom he filed his claim refused to consider the same until the bill of lading was filed which the shipper refused, claiming he had not signed it. *Held,* that the shipper was not entitled to add to the value of the horse the amount of unpaid freight and feeding charges, nor was he entitled to the statutory penalty of $50 for nonpayment of his claim.

8. CARRIERS OF LIVE STOCK—DAMAGES.—Where neither consignor nor consignee incurred any expense in transportation of live stock such expense is not to be considered in assessing damages for loss thereof.

9. CARRIERS—CLAIMS—PENALTY.—Where a claim filed against a carrier is not established in action thereon, the penalty for failure to pay or adjust within time limited is not recoverable.

Before MOORE, J., York, July, 1914.   Modified.

Action by Southern Railway Company against S. J. Kimball and W. O. Kimball. The facts are stated in the opinion. From judgment for defendants, plaintiff appeals.

The seventh exception was as follows:

7. Excepts, because the presiding Judge erred in admitting in evidence, over plaintiff's objection, a copy of the claim filed with plaintiff by defendants, upon the ground that plaintiff denied receiving the same, and therefore no notice to produce was necessary; the error being, that no notice to produce had been served on plaintiff, and the denial in the reply did not dispense with the necessity for said notice.

*Messrs. Spencer, Spencer & White,* for appellant.

*Messrs. Wilson & Wilson,* for respondents, cite: *As to contract limiting liability:* 73 S. C. 142, 289; 82 S. C. 373; 96 S. C. 356. *Damages:* 75 S. C. 24. *Notice to produce:* 52 S. C. 74. *No prejudicial error:* 78 S. C. 80; 79 S. C. 340; 93 S. C. 295, 426; 96 S. C. 388.

March 2, 1916.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was an action by the plaintiff against the defendant for the recovery of $158 freight charges and $23 feed charges, arising out of a shipment of a carload of horses and mules from St. Louis, Mo., to Rock Hill, S. C., by and to the defendants. The answer set up a counterclaim the loss of one of the horses included in the shipment, due to the alleged negligence of the carrier, and asked judgment for the value of the horse, $235, and the penalty for failure to pay the claim filed with plaintiff's agent. In reply, the plaintiff pleaded the execution of a stock contract or bill of lading, providing for a limited valuation of $100 per head, in consideration of the reduced rate of $158, which was actually charged, and further pleaded the applicability of the interstate tariffs governing the reduced valuation filed in accordance with the Interstate Commerce Act. The cause was heard before Judge Moore and a jury at the July term, 1914, Court at York, S. C., and after all the evidence was in and after motion and argument his Honor directed a verdict for the defendants for the amount of claim and penalty or $285 less the freight and feed charges, or $181, making the amount of the verdict in favor of defendants in the sum of $104. After entry of judgment plaintiff appeals, and by ten exceptions alleges error and seeks reversal.

Exceptions 1, 2 and 3 impute error to his Honor in not submitting to the jury the question whether or not the defendants authorized or directed the shipment of stock under the bill of lading introduced. The bill of

1, 2, 3 lading was admitted for what it was worth. It was admitted that if Timberlake was present that he would testify that he signed, but there was at no time any proof that the defendants authorized him to ship at a reduced rate and a limited liability or any evidence from which that inference could be drawn. Even if Timberlake was the agent to ship the stock that would only give him the authority to ship at the regular rate unless it was shown

that the entire matter was left with him or under such circumstances that that power could be inferred.   In this case the defendants did not give him any such authority as is shown conclusively by the evidence in the case.   The plaintiff introduced the bill of lading in evidence signed by Timberlake and S. J. Kimball & Son by "Wilton."   Timberlake was the agent of Louisville & Nashville Railroad Company; who "Wilton" is does not appear, there is not a particle of evidence to show that he had authority to act for the defendants, or that they knew him or ever heard of him until the bill of lading turned up signed by him for them.

This Court has said in *Wise* v. *Railroad Company,* 101 S. C. 510, 85 S. E. 22: "When a shipment is tendered to a common carrier in good order for shipment it is the duty of the common carrier to receive and ship it; and the common carrier is required to do so, and receive for its service the usual freight charges.  The shipper has the right to ship the article unreleased and recover full damages for any loss or damage that occurs, and the full freight charges must be paid.   However, the parties have the right in consideration of reduced rates to release the property shipped and limit the liability, but a contract must be made to this effect or the shipper's attention must be called to what has been done or intended to be done, and he must assent thereto.   A common carrier has no right to limit its liability to the shipper for loss or injury to the property shipped without the consent or assent of the shipper.   When property is tendered for shipment it is presumed that the shipper desires to ship it unreleased, pay full freight charges and collect for loss or damage full value.  It is for the shipper to determine whether he will release the shipment, pay a less freight charge, and collect a limited value in case of loss or damage.   He can contract to do this, or if his attention is called to the fact that it is being done, and he consents or assents to it he will be bound.   A railroad will not be

allowed to make a one-sided contract to limit its liability to a shipper without the shipper's consent. It is for the shipper to direct whether his shipment is to be shipped 'released' or 'unreleased,' to hold otherwise would be unreasonable and farcical and open the door to injustice and fraud."

These exceptions are overruled.

Exception 4 imputes error in not submitting to the jury the question: Whether or not the filing of the bill of lading with the claim for damages with defendants' agent at Rock Hill was an acceptance of the terms of the bill of lading? There is nothing in this exception. Kimball had told the agent that he had not signed the contract, and the agent refused to take up the claim for loss of horse until the defendants got the bill of lading and filed it with the claim. Under these circumstances the defendants could not be bound on the theory that they had accepted the terms embodied therein.

This exception is overruled.

Exception 7 was not argued by the appellant, but there is no merit in it; it is overruled.

The other exceptions are to the loss proved. These exceptions must be sustained; the evidence shows that the horse was worth $225 in St. Louis, and the defendant put in a claim for $235 as its value at Rock Hill, claiming that the freight and feed bill for the horse was $10 from St. Louis to Rock Hill, but the freight and feed bill had not been paid by the defendants, and they have been at no expense getting the horse, and are out nothing except what they paid for it at St. Louis, which is $225, and the claim filed was for $235, when its value was only $225.

His Honor was in error in holding that the defendants were entitled to the penalty of $50, and $10 for freight and feed, and directing a verdict for defendants in the amount

he did.    He should have deducted from the claim of the defendants of $235, $10 for the freight and feed, making the defendants' claim $225, and he should not have allowed the penalty of $50.    The judgment of this Court is that there be a new trial unless the defendants within ten days after the remittitur from this Court is received by the Circuit Court remit on the record sixty dollars of the verdict directed by the Circuit Court.

New trial *nisi.*