15976

McELVEEN *ET AL.* v. ATLANTIC COAST LINE R. CO.

(43 S. E. (2d) 485)

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, for Appellant, cite:

*Messrs. McEachin & Townsend,* of Florence, for Respondents, cite:

August 1, 1947.

TAYLOR, J.: This action was brought in the Florence County, South Carolina, Court to recover damages allegedly suffered by the plaintiff by reason of the alleged negligence and carelessness of the defendant in transporting a carload of mules from Murfreesboro, Tennessee, to Lake City, South Carolina, alleging that the defendant fed the mules molded alfalfa hay from which four of said mules died. The answer is a general denial and prays reference to an original uniform livestock contract issued by the originating shipper.

The case came on for trial before the Honorable R. W. Sharkey and a jury May 31, 1946, resulting in a verdict for the plaintiff for $1,063.36. The defendant made timely motions for a nonsuit, directed verdict and new trial, all of which were overruled; and the defendant now appeals to this Court upon the following exceptions:

1. That the trial judge erred in refusing to grant plaintiff's motion for a nonsuit and plaintiff's motion for a directed verdict in that there was no testimony by the plaintiff from which a reasonable conclusion could have been drawn that the mules were fed molded alfalfa hay by the defendant.

2. That the trial judge erred in refusing to order a nonsuit and in refusing to order a directed verdict in that the plaintiff's testimony was such that the cause of the death of the mules was a matter of pure conjecture on the part of the jury.

3. That the trial judge erred in refusing to order a non-suit and in refusing to order a directed verdict as to the death of the two mules which died on Sunday night, in that the testimony of the plaintiff's own expert witness was to the effect that it would not have been possible for the two mules, which died on Sunday night, to have survived if they had been fed the molded alfalfa hay at the time as alleged and proved by the plaintiff.

4. That the trial judge erred in charging the jury that they should ascertain from the complaint the valuation placed upon the mules and determine whether that is a fair value, and whatever value was found, to take that value and add to it the amount of the freight paid by the plaintiff, in that the proper measure of damages would be the value of the mules at the point of destination, without regard to their cost, or the amount of the freight charges, which value was not proven by the plaintiff.

5. That the trial judge erred in submitting the case to the jury when the plaintiff had failed to prove the condition of the animals, when they were loaded in Tennessee at the point of origin, in that to make out a *prima facie* case it is required of the plaintiff to prove that the mules were in good condition and free of defects at the time of loading.

6. That the trial judge erred in admitting in evidence over defendant's objection a feed bill, the amount of which was not in issue under the pleadings and which feed bill had certain pencil notations thereon that were prejudicial to the defendant, and was improperly introduced in evidence.

The mules were purchased by the plaintiff, after personal inspection, from various owners in Tennessee and shipped from Murfreesboro, Tennessee, September 19, 1944. The shipment included 26 mules and one horse. They arrived in Atlanta some time the next day, the car being spotted at the stock pens at 2:15 p. m., September 20, where the stock was unloaded for resting, feeding and watering. After being reloaded, they continued their journey to Lake City,

South Carolina, arriving September 23, at 6 p. m. They were unloaded from the car that night at approximately 9 o'clock and were shortly carried to plaintiff's place of business in Olanta. The following morning, the mules were observed by the plaintiff as not being in good shape, but he believed it to be from shipping as they appeared tired. By Sunday morning, they appeared worse and two of the mules died during the night. Dr. Gibson, the veterinarian for the defendant, was contacted and he began treating the mules immediately Sunday morning. A *post mortem* was performed on the two dead mules and the next night two more died and a *post mortem* performed on them the following day. Dr. Gibson, the veterinarian for the defendant, testified that he performed the *post mortems* and found undigested molded alfalfa hay which was so situated that in his opinion the mules had died from forage poisoning caused by the eating of this molded hay. There is testimony to the effect that such poisoning would result in partial paralysis of the stomach, causing the poisonous feed to lodge and remain undigested and unmoving; that it usually takes from 24 to 36 hours for mules to show signs of such poisoning, and death generally results in about 48 to 72 hours; that in his opinion (Dr. Gibson), these mules died from such poisoning.

The appellant contends that the mules were fed at Moore's Feed Pens, in Atlanta at 2:15 p. m., September 20, and were reloaded at 6 a. m., September 21, and delivered to respondent at Lake City, South Carolina, at 5:30 p. m., September 22, in apparently good condition; that had the mules been fed molded alfalfa hay at 2:15 September 20, more than 72 hours would have elapsed between the feeding and time of death. This being the only feeding by the defendant, they were therefore not responsible for the feeding of the molded alfalfa hay to the mules, if such was the cause of their death.

The mules were loaded the 19th with a health certificate attached. Plaintiff testified that he bought these mules separately from various persons; that he

personally inspected them, and that they were in good condition. Appellant's car inspector at point of shipment inspected them and none were down. Mr. Adams, who fed them in Atlanta, said their condition was good at that time. Dr. Meisner, a veterinarian in Atlanta, stated that their condition was good at the time of re-loading. All of which is competent evidence as to the condition of the mules at that time. See *Millam v. Southern Ry. Co.,* 58 S. C. 247, 36 S. E. 571. All the testimony points to the stock being in good condition upon arrival and leaving Atlanta, but there is no question that they were fed molded alfalfa hay somewhere at some time, from which all became ill. The exact time of the feeding in Atlanta is not exactly clear. Dr. Gibson stated that the animals would be noticeably ill from 24 to 36 hours after eating molded alfalfa hay, and if they were going to die would do so in from 48 to 72 hours; that the length of time within which such sickness would show and death result would vary with the amount of the hay eaten, the condition of the animals before being poisoned, and the condition of the feed at the time it was eaten, but that the time limit in which death would result was usually 72 hours. He stated positively that the mules could not have died from the feed given them prior to September 19, the date of shipment.

The feed bill is indistinct and confusing; the appellant claiming they were fed at 5:30 p. m. on the 20th; the respondent claiming that they were fed, watered and loaded on the 21st; that if they were fed at 5:30 p. m., the 20th, the food was kept before them until such time as they were loaded the next day; that the feed bill shows that they were fed, watered and loaded at 5:30 a. m., the 21st, all of which placed it within the province of the jury to determine whether or not such was a fact and whether or not the sickness and death of the mules was caused thereby.

The appellant relies mainly upon the case of *Panhandle & S. F. R. Co. v. Wilson,* Tex. Civ. App., 135 S. W. (2d) 1062; but in that case, the question

of death or injury to the animals being shipped could not be definitely ascertained; while here the testimony was positive that they were fed molded alfalfa hay, and how these animals obtained this molded alfalfa hay became a question for the jury.

In *Stephenson Mule Co. v. Powell et al.,* 199 S. C. 450, 15 S. E. (2d) 389, 391, we find the following:

"The rule of law is, that when the carrier fails to deliver goods, or when he delivers goods in a damaged condition, the onus is cast upon him to show that he is not in fault. In other words, loss or injury is sufficient proof of negligence or misconduct, or of the intervention of human agency, and when shown, the burden is on the carrier to exempt himself. * * * But the shipper must show an injury to the article shipped before the burden is cast upon the carrier to exonerate himself. Is an injury shown when the article shipped is a horse or other live stock, which is proved to have been delivered to the carrier in good health and condition, and to have been re-delivered to the shipper in a sick and debilitated condition, but without any fractures, wounds, abrasions, or other external or visible injury? I think not. As well might a passenger who embarks in good health claim to support an action for damages against the common carrier, by simply showing that when he disembarked at the end of his voyage he was in a sick and debilitated condition."

The appellant, in the fourth exception, takes the position that the trial Judge committed error, and that he was prejudiced thereby when the jury was charged the following: "I am going to submit to you gentlemen the question of ascertaining the value of the mules. You will ascertain from the complaint the valuation placed upon the mules by the plaintiffs and determine whether that was a fair value or not and whatever value you find you take that value and add to it the amount of freight paid by the plaintiff and write your verdict for the total of those two items," and cites the following cases, *McCaull-Dinsmore Co. v. Chicago, M. & St. P. R. Co.,* 253 U. S. 97, 40 S. Ct. 504, 64 L. Ed. 801; *The Steam-*

*ship Ansaldo, etc.,* 294 U. S. 494, 55 S. Ct. 483, 79 L. Ed. 1016; *Illinois Central·R. Co. v. Crail,* 281 U. S. 57, 50 S. Ct. 180, 74 L. Ed. 699, 67 A. L. R. 1423, and 9 Am. Jur., Section 780, page 906, as authority of the following:

"In the absence of any provision to the contrary, the ██ measure of damages for property injured by a carrier in the course of transportation is ordinarily the difference between its market value at its destination as it would have arrived but for such injury, and its market value in the condition in which it actually arrives. * * * In the case of injuries to livestock, the rule has been stated to be that the measure of damages is the difference between the market value of the animals in their condition at the time they would have arrived but for the carrier's negligence, and their market value in their injured condition at the time they did arrive. There is no distinction in the measure of damages for injuries to livestock between cattle shipped to market for immediate sale, and cattle intended for grazing and later sale, and in either case the actual loss to the shipper is the lessened market value of the property at the time and place of arrival at destination."

In a few early cases, the value of the goods at the time and place of shipment was considered as governing the amount of recovery where the action was in tort. In the case of livestock, the correct measure of damages for total loss is the price the animals would have brought in the market at the place of destination at the time they should have arrived if transported and delivered in a reasonable time, and in the condition they would have been in had the company exercised due and necessary care of the same while in its possession. *Cleveland C. C. & St. L. R. Co. v. Stormont,* 99 Ind. App. 61, 187 N. E. 838, citing R. C. L., *Davis v. Hunter,* 79 Ind. App. 462, 138 N. E. 785, citing R. C. L.; *Missouri Pac. R. Co. v. Fagan,* 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; *Byram v. Payne,* 58 Utah 536, 201 P. 401, 18 A. L. R. 1110; 9 Am. Jur. 905, Sect. 779.

"It has been said that when there is no evidence as to the value of the goods at their destination recovery can be had as to the value at the shipping point instead." 9 Am. Jur. 906, Sec. 781.

"In *Smith v. Griffith,* 3 Hill, N. Y., 333 (38 Am. Dec. 639), which was a case against common carriers, Nelson, C. J., states the rule as I understand it. 'If goods are wholly lost or destroyed the owner is entitled to their full worth at the time of such loss or destruction.' " *Shaw & Austin v. South Carolina R. Co.,* 5 Rich. 462, 464, 57 Am. Dec. 768.

"The evidence shows that the horse was worth $225.00 in St. Louis, and the defendant put in a claim for $235.00 as its value at Rock Hill, claiming that the freight and feed bill for the horse was $10.00 from St. Louis to Rock Hill; but the freight and feed bill had not been paid by the defendants, and they have been at no expense getting the horse, and are out nothing, except what they paid for it at St. Louis, which is $225.00, and the claim filed was for $235.00, when its value was only $225.00." *Southern R. Co. v. Kimball,* 103 S. C. 365, 88 S. E. 14, 15.

In this case, no demand is made for more than the cost, plus the shipping charges. The plaintiff's business is buying and selling of livestock at a profit. However, as a measure of damages, he asked only for the purchase price at the shipping point, plus the freight, rather than the resale value at the point of destination; and this Court is unable to see wherein appellant was prejudiced thereby.

Exception 6 raised the question of whether or not it was error in admitting the feed bill (the amount of the feed bill not being in issue under the pleadings), but this bill was admitted into evidence for the purpose of showing when and where the mules were fed and re-loaded; the respondent contended that the notations thereon were inconsistent and confusing, in which this Court agrees, and sees no error in its admission into the evidence.

Therefore, all exceptions are overruled, and the judgment of the lower court is affirmed.

Judgment affirmed.

BAKER, CJ., and FISHBURNE, STUKES and OXNER, JJ., concur.